PEARSON, MJ.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Robert O. Powers, | ) | CASE NO. 5:08-CV-520 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PETER C. ECONOMUS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| Maggie Beightler, Warden, | ) | BENITA Y. PEARSON |
| | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Pending before the undersigned is Petitioner Robert O. Powers' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Powers is incarcerated at Marion Correctional Institution in Marion, Ohio, serving an eleven year sentence following his 2006 conviction on numerous charges related to burglary, assault, domestic violence and weapons possession. Initially, Powers raised twenty grounds for relief in his petition. In the later filed traverse, he "voluntarily waived" all claims with the exception of those in Grounds for Relief One, Two and Three. ECF No. 16 at 1. Respondent contends that (1) the state court of appeals' adjudication of Grounds One and Three was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; and (2) that Ground Two is procedurally defaulted.

For the reasons that follow, the undersigned recommends that Grounds One, Two and Three be denied and that the petition be dismissed in its entirety.

(5:08cv00520)

# I. Factual and Procedural Background

### A.      Facts

The Court of Appeals found the facts of the underlying offenses and trial as follows:[1]

> On February 28, 2006, Officer Steve Hankins ("Hankins") was
> dispatched to an apartment complex at 730 Callis Drive, in Akron,
> Ohio.  Hankins was responding to a domestic violence call.  He
> arrived on the scene at approximately 10:30 p.m., where he found
> Shana Clark ("Clark"), the victim, being treated by paramedics.
> Clark was upset and had a laceration on her head.  Clark informed
> police that when she opened the door to her apartment, Appellant
> pushed her from behind and forced her inside.  He then picked up a
> speaker and threw it through the patio window.  Clark told Hankins
> that Appellant then hit her twice on the head with a gun. Appellant
> then left Clark's apartment.  Clark gave Hankins Appellant's name.
> Clark was then transported to the Akron Police Station where she
> signed charges against Appellant.  Clark called her mother, Aretha
> Jackson ("Jackson") from the police station, and Jackson then took
> Clark to the hospital.
>
> Officer Kevin Evans ("Evans") arrested Appellant at his home on
> domestic violence charges.  Appellant was indicted on five counts:
> one count of aggravated burglary, in violation of R.C.
> 2911.11(A)(1)/(2), one count of felonious assault, in violation of
> 2903.11(A)(2), one count of having a weapon under disability, in
> violation of R.C. 2923.13(A)(1)(2)(3), one count of domestic
> violence, in violation of R.C. 2919.25(A), and one count of criminal
> damaging, in violation of R.C. 2909.06(A)(1).  Appellant pled not
> guilty to the charges, and the matter proceeded to a jury trial on July
> 31, 2006.  Clark testified on behalf of the defense.  At the conclusion
> of the trial, the jury found Appellant not guilty of aggravated burglary
> and guilty of the remaining four counts.  On August 15, 2006, the
> trial court sentenced Appellant to seven years on the felonious assault
> charge, two years on having a weapon under disability charge, one
> year on the domestic violence charge and 90 days on the criminal

---

[1] The State appellate court's factual findings shall be presumed correct; petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

2

(5:08cv00520)

> damaging charge. The trial court ordered the sentences for felonious assault and having a weapon under disability to run consecutively for a total of nine years, which would run concurrently with the remaining sentences. *State v. Powers* (June 6, 2007), Summit App. No. 23400, 2007 Ohio 2738, 2007 Ohio App. LEXIS 2527.

ECF No. 12 at 15 & 16.

### B.    Offenses and Convictions

Powers was indicted on one count of felonious assault with a firearm specification; one count of having weapons under disability; one count of trafficking in marijuana; one count of possession of marijuana; and one count of illegal use or possession of drug paraphernalia. ECF No. 12-2 at 1-5. Powers pled not guilty to the charges in the indictment. On February 11, 2005, a supplemental indictment was issued charging Powers with one additional count of trafficking in marijuana; and one additional count of possession of marijuana in violation of § 2925.11. ECF No. 12-2 at 6 &7. Powers pled not guilty to the charges in the supplemental indictment. On April 19, 2005, Powers agreed to plead guilty to two counts of trafficking in marijuana, thereafter the state dismissed the remaining charges. The Court accepted Powers' plea and on that same date sentenced him to nine months on the first count of trafficking in marijuana; and a consecutive twelve months for the second count of trafficking in marijuana. The Court then suspended Powers' prison sentences upon the condition that he complete two years of community control. ECF No. 12-2 at 8-11.

Subsequently, on March 14, 2006, Powers was indicted on one count of aggravated burglary; one count of felonious assault; one count of having weapons while under disability; one count of domestic violence; and one count of criminal damaging or endangering. ECF No.

3

(5:08cv00520)

12-2 at 12- 14.  Powers pled not guilty.

As a result of the charges in the new indictment, the State court charged Powers with a community control violation from his previous case.  Powers pled not guilty to the community control violation at which time the State court scheduled a pretrial.  ECF No. 12-2 at 16.  On April 21, 2006, Powers filed a motion to suppress any jailhouse phone conversations.  ECF No. 12-2 at 17-20.  On May 8, 2006, Powers filed a supplemental motion to suppress the statements.  ECF No. 12-2 at 21-24.  On May 9, 2006, the Court held a hearing on the initial motion to suppress.  ECF No. 12-2 at 25-27.  On May 30, 2006, the supplemental motion to suppress was denied.  ECF No. 12-2 at 28.  On August 3, 2006, Powers was found guilty of felonious assault; having weapons while under disability; domestic violence and criminal damaging or endangering.  The Court found Powers not guilty of aggravated burglary.  ECF No. 12-2 at 29- 30.  As a result, in Powers' previous case his community control was revoked.  ECF No. 12-2 at 31.

On August 18, 2006, the Court sentenced Powers to an aggregate term of nine years incarceration to be served consecutively with his sentence for his community control violations. For his community control violations, Powers received a sentence of nine months for the first count of trafficking in marijuana, consecutive to twelve months for the second count of trafficking in marijuana.  ECF No. 12-2 at 34-35.  In total, Powers was sentenced to eleven years of imprisonment.

### C.    State Post-Conviction Litigation

On September 18, 2006, Powers, represented by counsel, filed a timely notice of appeal

4

(5:08cv00520)

to the Ninth District Court of Appeals, Summit County.  ECF No. 12-2 at 36-37.  In his brief,

Powers presented five assignments of error.  *See* Appendix A.  ECF No. 12-2 at 41**.**  The Court

of Appeals issued a decision and journal entry on June 6, 2007, overruling each assignment of

error and affirming the judgment of the trial court.  ECF No. 12-2 at 96-105**.**

On July 20, 2007, Powers filed a timely *pro se* notice of appeal to the Supreme Court of

Ohio.  ECF No. 12-2 at 109 - 110**.**  Powers presented seven propositions of law.  *See* Appendix

B.  ECF No. 12-2 at 112**.**  Powers also filed a motion for immediate stay on the Court of

Appeals' judgment and a notice of claimed appeal as of right.  ECF No. 12-2 at 144 & 146.  The

State did not reply.  On October 31, 2007, the Supreme Court of Ohio issued an entry denying

the thirty day stay and leave to appeal as not involving any substantial constitutional question.

ECF No. 12-2 at 162.

On September 12, 2007, Powers filed a *pro se* application to reopen his appeal based on

ineffective assistance of appellate counsel.  The application was nine days late.  Consequently,

on October 4, 2007, a journal entry striking the motion as untimely was docketed.  ECF No. 12-2

at 230**.**

Seeking reconsideration of the denial, Powers filed a motion for delayed application for

reopening his appeal arguing that he placed his previous application in the prison mailing system

on August 30, 2007, and therefore his application should be deemed timely because he allowed

five days for delivery to the Court.  He did not further explain the delay in filing from August 30,

2007, to October 23, 2007.  ECF No. 12-2 at 231**.**  The Court of Appeals construed the motion as

a motion for reconsideration of the previous decision, and ultimately denied it on October 30,

5

(5:08cv00520)

2007.  The Court noted that the application was improperly mailed by Powers to the Court of

Common Pleas; and even if it ignored that error, the "mailbox rule" did not apply to save his

application.  The Court cited *Tyler v. Alexander*, 52 Ohio St. 3d 84 (1990) (explaining Ohio does

not follow the "mailbox rule").  ECF No. 12-2 at 237.

Then, on November 28, 2007, Powers filed a *pro se* notice of appeal to the Supreme

Court of Ohio from the October 30, 2007, Court of Appeals' decision.  ECF No. 12-2 at 239.

The notice of appeal was untimely as to the Court of Appeals decision of October 4, 2007, but

timely as to the decision of October 30, 2007.  Powers presented two propositions of law.  *See*

Appendix C.  ECF No. 12-2 at 242.  The State filed a memorandum in opposition arguing that

the application to reopen filed on September 12, 2007, was not timely.  ECF No. 12-2 at 253.

The Supreme Court of Ohio issued a journal entry on February 6, 2008, dismissing the appeal as

not involving any substantial constitutional question, treating it as a timely appeal of the decision

of October 30, 2007.  ECF No. 12-2 at 263.

On May 25, 2007, Powers filed a *pro se* petition to vacate or set aside judgment arguing

that (1) the trial court erred when it denied him his right to represent himself; (2) he received

ineffective assistance of trial counsel; and (3) he was denied due process because of

prosecutorial misconduct.  ECF No. 12-1 at 264, Exhibit 32.  The State filed a motion to dismiss

on the basis of *res judicata,* as Powers' claims either were or could have been raised on direct

appeal.  ECF No. 12-2 at 271.  On June 21, 2007, Powers filed a reply to Respondent's motion to

dismiss arguing that (1) all of Powers' claims relied upon evidence outside the record; (2)

Powers' claim that he was denied the right to represent himself required the transcript of the

6

(5:08cv00520)

*Faretta* hearing, which should have been filed on appeal but was not; (3) Powers' claim of trial counsel error pertained to his failure to investigate the case by transcribing the tapes of the jailhouse telephone conversations; and (4) that the prosecutorial misconduct pertained to the failure of the prosecutor to limit her use of his prior convictions to prove the weapons charge. Powers maintained that the alleged stipulation would bear out his claim that the prosecutor improperly referred to his criminal convictions in cross-examining the victim and in closing argument. ECF No. 12-2 at 274.

### D. Federal Litigation

On February 29, 2008, Powers filed a petition seeking writ of habeas corpus, pursuant to Title 28, United States Code Section 2254, asserting six grounds for relief. On June 23, 2008, Powers filed a motion to amend his petition for habeas corpus and presented fourteen additional grounds for relief. *See* Appendix D. ECF No. 12 at 9-15.

Subsequently, on October 27, 2008, Powers filed a traverse in which he "voluntarily waived" all grounds except Grounds One, Two and Three. As a result, before the Court are the following Grounds for Relief:

**1. GROUND ONE**: THE TRIAL COURT DENIED PETITIONER THE SIXTH AMENDMENT RIGHT TO REPRESENT HIMSELF AT TRIAL.

**2. GROUND TWO**: PETITIONER WAS DENIED DUE PROCESS WHEN THE STATE WAS PERMITTED TO REMARK THAT SEVERAL GUNS FROM A PREVIOUS CASE BELONGED TO THE PETITIONER.

**3. GROUND THREE**: THERE WAS INSUFFICIENT EVIDENCE TO PROVE THE ELEMENTS OF HAVING WEAPONS WHILE UNDER DISABILITY.

ECF No. 16 at 1.

7

(5:08cv00520)

Notably, the undersigned granted Powers' motion to expand the record to include certain documents, records, and transcripts that he thought would be of "great assistance in determining the merits of his claims." ECF No.14; ECF No. 19.  His request to correct the record was denied. ECF No. 34.   Additionally,   the undersigned denied Powers' motions for an evidentiary hearing, to revise his traverse and granted his motion to amend his petition.  ECF No. 38. Respondent noticed that Court that no supplemental return would be filed.  ECF No. 41.

## II.  Law and Argument

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) the statute of limitations for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment becomes final.  28 U.S.C. § 2244(d)(1).  The provisions of AEDPA are controlling herein as the instant petition was filed after the Act's effective date. *Lindh v. Murphy*, 521 U.S. 320 (1997).

In light of the fact that Respondent had not claimed any issues of untimeliness and the Court have not independently found untimeliness, the Court turns its attention to procedural default, cognizability, and conduct a merits review.

### A.    **Ground Two is Not a Cognizable Issue under § 2254, Procedurally Defaulted, and Without Merit.**[2]

Powers alleged that he was denied due process when the trial court allowed the state prosecutor to mention Powers' prior gun charges.  Powers asserted that the trial court unjustly

---

[2]  Ground Two: Petitioner was denied due process when the state was permitted to remark that  several guns from a previous case belonged to the petitioner.

(5:08cv00520)

permitted the prosecutor to remark that several guns from a prior offense belonged to Powers, when in fact Powers had been exonerated of the prior offense.  ECF No. 1.

In his return of writ, Respondent contends that Ground Two is procedurally defaulted because Powers failed to challenge the prosecutor's remark at trial,[3] and did not include this particular claim in his direct appeal.  In fact, Powers only mentioned this claim in his post-conviction petition to vacate and set aside.  In his motion to dismiss the state post-convict petition, Respondent argued that Ground Two was barred by *res judicata* because it was not raised on direct appeal.

The Court finds that the trial court's decision to allow the prosecutor to ask questions about Powers' prior gun charges is not an issue cognizable in a federal habeas corpus petition, and, if it were cognizable, the attendant due process claim is procedurally defaulted and without merit.

### 1. Ground Two is Not Cognizable

State prisoners are entitled to federal habeas corpus relief only when they are in custody due to violations of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).

---

[3]  The record reflects that Powers' counsel did object to a question regarding guns that allegedly belonged to Powers during the following exchange:

> Q: And were you aware that during the resolution of that charge wherein he pled guilty to trafficking in marijuana, several of his firearms were taken and destroyed?
> Mr. Summers: Objection.  Judge, he was not convicted of guns.  They are not his guns.
> Court: Overruled.

ECF No. 12-6 at 105-06.

9

(5:08cv00520)

As the Supreme Court of the United States explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is not part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.

State court evidentiary rulings do not rise to the level of due process violations unless they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir.2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003).  "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Bugh*, 329 F.3d at 512 (citations omitted).

Powers' request that the Court grant his writ of habeas corpus due to an allegedly unjust evidentiary ruling made by the trial court based upon state criminal law.  It is not the province of a federal habeas court to re-examine state court determinations of state law questions, a federal habeas court may not review the State court's ruling regarding Ground Two unless is rises to the level of a violation of due process.  Based on the record, the undersigned does not find that there was a violation of Power's right of due process.  Concomitantly, the undersigned does not find that the trial court's alleged error in state law rises to a level of constitutional magnitude so

10

(5:08cv00520)

egregious as to have denied Powers' a fundamentally fair trial.[4] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)*; Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Accordingly, the undersigned finds that Ground Two is not a cognizable issue under § 2254, and Powers' Second Ground for Relief should be denied.

### 2.  Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus*. Black v. Wilson*, 2007 WL 2973660 (N.D. Ohio 2007) (quoting *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991)); 28 U.S.C. § 2254(b),(c).  A petitioner must fairly present any claims to the state courts in a proper constitutional context in order to exhaust state remedies.  *Id.*(quoting *Anderson v. Harless*, 489 U.S. 4, 4 (1982)*; Picard v. Connor*, 404 U.S. 27, 27 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989)).

The remedy for failure to exhaust requires a petitioner to return to State court and make use of whatever State remedies remain to adjudicate his claims.  If a petitioner has no remaining remedies because the petitioner cannot comply with the relevant procedural rules or is barred by *res judicata*, it is nonsensical to return a petitioner to a state court in a futile effort to attempt remedies that state law prevents a petitioner from using.  In that case, the petitioner's remedies

---

[4]  Powers was not denied a fundamentally fair trial because even without the prosecutor's remarks, there was other ample evidence that the jury could have relied upon to come to reach the conclusion that Powers hit the victim with a gun and not his fist.  For example, the jury could have relied upon the victim's initial statements that Powers hit her with a gun.  Additionally, the jury could have surmised from the victim's testimony and later retraction, that the victim only retracted her statements about the gun because Powers had told her to do so.  ECF No. 12-2 at 101-03.

(5:08cv00520)

are deemed exhausted, meaning that no state remedies are available.  *Id*. *See Gray v. Netherland, 518 U.S. 152, 161-62 (1996)*.

Technically, Powers has not exhausted all available state remedies because the Supreme Court of Ohio has not yet ruled on his petition to vacate or set aside.[5]  However, if the Supreme Court of Ohio were to rule, it is probable that it  would agree with Respondent's *res judicata* argument and find that Ground Two is barred because Powers did not put forth the claim at his first opportunity.  Accordingly, "it makes no sense to send the petitioner to the [S]tate courts in a futile effort to attempt remedies that state law prevents . . . ." *Gray, 518 U.S. at 161-62*. Therefore, Ground Two is deemed exhausted and Powers has no remaining state remedies.

Respondent's *res judicata* argument is well taken by this Court.  As shown in Respondent's discussion of the *Maupin* factors, the facts of this case are within the scope of the *Maupin* test, and thus constitute procedural default.[6]  ECF No. 12 at 22.  Therefore, this Court

---

[5]  Upon the filing of this Report and Recommendation, the State trial court has not ruled upon Powers' petition to vacate and set aside filed on May 25, 2007; Respondent has filed an opposition.  Notably, the State court of appeals affirmed Powers' conviction in its entirety on June 6, 2007.

[6]  Respondent's *Maupin* discussion is as follows:

The procedural default herein satisfies the first three parts of the *Maupin* test.  The first part is satisfied because the State of Ohio does have a rule of procedure that requires a defendant to present his claims at the earliest opportunity.  *See State v. Perry, supra*.  If the defendant fails to present his claim at the first opportunity, the claim is procedurally defaulted under the state doctrine of res judicata.  The second part of the test is satisfied because the state was not obliged to enforce the rule; no claim was presented upon direct appeal.  As for the third part, federal courts have long held that res judicata is an adequate and independent basis upon which the state may rely to foreclose review of a federal claim.  *See Monzo v. Edwards, 281 F.3d 568, 577 (6th Cir. 2002); Coleman v. Mitchell, 268 F.3d 417, 427-29 (6th Cir. 2001); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001); Byrd v. Collins, 209 F.3d 486, 521 (6th Cir.*

(5:08cv00520)

finds that Ground Two should be denied because it is procedurally defaulted.

### 3.  Merits Review

In *Bugh*, the Sixth Circuit considered whether the admission of evidence concerning similar, uncharged acts of criminal sexual conduct violated a petitioner's due process right to a fundamentally fair trial.  *Bugh*, 329 F.3d at 512.  The Court squarely held that the admission of prior bad acts evidence was not contrary to clearly established Supreme Court of Ohio precedent. The Supreme Court of Ohio has not clearly established precedent holding that a state court violates due process by permitting a propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court of the United States declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief.  502 U.S. 62, 75 (1991).  The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show a propensity to commit a charged crime.  *Id*. at 75 n.5.

Moreover, in *Spencer v. Texas*, 385 U.S. 554 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose was served.  *Id*. at 563-64.  The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure.  And none of the specific provisions of the Constitution ordains this Court

---

2000), cert. denied, 531 U.S. 1082 (2001); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  As to the fourth part, Powers has not demonstrated that there was either cause or prejudice for his failure to present this claim to the state courts.  ECF No. 12 at 22.

(5:08cv00520)

with such authority." *Id.* at 564.  While the Supreme Court of the United States has addressed

whether prior acts testimony is permissible under the Federal Rules of Evidence, *Old Chief v.*

*United States*, 519 U .S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), that

Court has not explicitly addressed the issue in constitutional terms.  Accordingly, the district

court correctly found that there is no Supreme Court precedent holding that the trial court's

decision could be deemed "contrary to," under AEDPA.  *Sifuentes v. Prelesnik*, 2006 WL

2347529 (W.D. Mich. 2006).

      If Ground Two were cognizable and not procedurally defaulted, the *Bugh* decision would

control Powers' due process claim.  Because the Supreme Court of Ohio has never addressed

whether the admission of other bad acts violates due process, the trial court's admission of the

evidence was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

As a consequence, this Court finds that Ground Two should be denied because it is without

merit.

      For the foregoing reasons, this Court recommends that Powers' Second Ground for Relief

be denied.

      **B.**    **The State Court of Appeals' Adjudication of Grounds One and Three Was**
              **Not Contrary To, Nor an Unreasonable Application Of, Clearly Established**
              **Federal Law**

The extent of permissible federal review of a state court decision on the merits is set forth

by 28 U.S.C. § 2254(d)(1) and (2), which provide:

> (d) an application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in state
> Court proceedings unless the adjudication of the claim-

14

(5:08cv00520)

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The phrases "contrary to" and "unreasonable application" are not the same. *Lockyer v. Andrade*, 538 U.S. 63, 75, 76 (2003). Under the "contrary to" standard, a state court's decision is contrary to clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result opposite to [] [this precedent]." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, the federal habeas court may grant relief only if the state court identified the correct governing principles from the holdings of the Supreme Court of the United States applicable to petitioner's claim, but then unreasonably applied those principles to the claim at issue. *Id.* at 407-08. The proper analysis here is whether the state court decision was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11. Petitioner bears the burden of showing that the state court applied the correct principle of law, but in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision. *Williams*, 529 U.S. at 412. The state court decision need not refer to nor show awareness of relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002). Rather, the test is whether the result and reasoning of the state court decision is consistent with Supreme Court holdings. *Id.* A state court does not

15

(5:08cv00520)

act contrary to clearly established federal law when the precedents of the Supreme Court are ambiguous or non-existent. *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (*per curiam*). Ultimately, in conducting its analysis, the federal habeas court must assume that the state courts "know and follow the law," and afford those courts a "highly deferential" standard of review, namely the benefit of the doubt. *Visciotti*, 537 U.S. at 24.

### 1. Ground One: Sixth Amendment Right of Self-Representation[7]

The Sixth and Fourteenth Amendments guarantee criminal defendants the right of self-representation at trial. *Faretta v. California*, 422 U.S. 806, 833-34 (1975); *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004). An accused will be permitted to represent himself only when he "knowingly and intelligently" relinquishes his right to counsel. *Id.* at 835. The request to proceed without counsel must be asserted unequivocally and in a timely fashion. *Id.* at 295-96; *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir. 1986). Once there is a clear assertion of the right to self-representation, the court must conduct a hearing to ensure that the defendant is fully aware of its dangers and disadvantages. *See Coleman v. Mitchell*, 268 F.3d 417, 449 (6th Cir. 2001) (explaining where the state trial court does not inform Powers of the disadvantages of self-representation, Powers' waiver of counsel is not knowing and voluntary); *Fowler v. Collins*, 253 F.3d 244, 249-50 (6th Cir. 2001). The standard of competency for representing oneself is the same as that for standing trial. *Godinez v. Moran*, 509 U.S. 389, 397-98 (1993); *Jones*, 414 F.3d at 591.

---

[7] <u>Ground One</u>: The trial court denied Petitioner the Sixth Amendment right to represent himself at trial.

16

(5:08cv00520)

Powers claimed that his Sixth Amendment right of self-representation was violated at trial.  Specifically, Powers alleged that he filed a motion to waive counsel that the trial court denied without conducting a hearing.  The Judge declared that she "makes the ultimate decision as to who represents Powers;" and that even though a *Faretta* hearing was held where Powers knowingly, intelligently, and voluntarily elected to proceed *pro se* and signed a consent to waive counsel form, the Judge subsequently denied his *Faretta* request.

Respondent cited the Court of Appeals' analysis and contends that the Court of Appeals' adjudication was not contrary to, nor did it constitute an unreasonable application of, federal law. The Court of Appeals rejected the substance of Ground One in the following fashion:

> [*P24] A criminal defendant has a *Sixth Amendment* right to self-representation. See *Faretta v. California* (1975), 422 U.S. 806, 812, 95 S. Ct. 2525, 45 L. Ed. 2d 562.  Moreover, the *Sixth Amendment* right to the assistance of counsel implicitly embodies a "correlative right to dispense with a lawyer's help." *Id.* at 814 (quoting *Adams v. United States ex rel. McCann* (1942), 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268.  The Ohio Supreme Court has further held that "if a trial court denies the right of self-representation when properly invoked, the denial is per se reversible error." *State v. Vrabel,* 99 Ohio St.3d 184, 2003 Ohio 3193 at P49, 790 N.E.2d 303, citing *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 1996 Ohio 21, 660 N.E.2d 456.

> [*P25] The record reflects that on April 25, 2006, the trial court denied Appellant's *pro se* motion to waive counsel.  Appellant has provided this Court with no evidence regarding the trial court's denial of Appellant's motion to waive his appointed counsel.  As the trial court noted at trial, Appellant had been "earlier advised, *** when represented by counsel, you speak to the Court through counsel of record."  Further, the trial court noted at Appellant's sentencing hearing, "we have talked about his matter of waiver of counsel before. We had a long discussion one day about that."  These statements imply that there had been an earlier hearing on Appellant's motion to waive his appointed counsel and to proceed

17

(5:08cv00520)

pro se.  Further, the State asserts that on June 8, 2006, the trial court did hold a hearing on this motion.  On this date, the trial court granted Appellant's appointed counsel's motion to withdraw and on June 9, 2006, appointed new counsel to represent Appellant.

[*P26] It is Appellant's duty to provide a transcript for appellate review because he bears the burden of demonstrating error by reference to matters in the record.  *State v. Skaggs* (1978), 53 Ohio St.2d 162, 372 N.E.2d 1355.  App.R. 9(B) provides that Appellant shall order from the reporter the portion of the transcript that he deems necessary for the resolution of assigned errors.  Appellant has not met the burden of producing a transcript of the proceedings to which the trial judge alluded at trial and sentencing from which Appellant claims error.  Therefore, this Court has nothing upon which to pass and has no choice but to presume the validity of the trial court proceedings.  *Knapp v. Edwards* (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384.  As such, we cannot say that the trial court abused its discretion.

Appellant's fifth assignment of error is overruled.

ECF No. 12 at 29.

The Court of Appeals relied upon a constitutional test espoused by and derived from a binding and precedential federal case and, as a result, the Court of Appeal's adjudication was not contrary to, nor did it constitute an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Accordingly, the undersigned recommends that Ground One be denied.

## 2.  Ground Three: Insufficiency of Evidence[8]

A claim that the evidence was insufficient to convict a petitioner is cognizable under § 2254.  *See Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006).  Because the Due Process clause

---

[8] Ground three: There was insufficient evidence to prove the elements of having weapons while under disability.

18

(5:08cv00520)

"forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt, a state law question regarding the elements of the crime predicates the enforcement of [Petitioner's] federal constitutional right." *Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005).  Sufficient evidence supports a conviction, if after viewing the evidence in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

Powers claimed that there was insufficient evidence to prove the elements of having weapons while under disability because at trial the prosecutor failed to produce any evidence that the firearm was operable.

Respondent cited the Court of Appeals' analysis of the claim and contended that the Court of Appeals' adjudication was not contrary to, or based upon an unreasonable application of federal law.  The Court of Appeals rejected the substance of Ground Three in the following manner:

> [*P11] While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion.  State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, 2000 Ohio App. LEXIS 969, at *4, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390, 1997 Ohio 52, 678 N.E.2d 541.  Further, [b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.  Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. (emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, 1997 Ohio App. LEXIS 4255, at *5.

19

(5:08cv00520)

[*P12] Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.

[*P13] When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

[*P14] This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Id*.

[*P15] In the present case, Appellant contends that his convictions for felonious assault, having weapons under disability, and domestic violence were against the manifest weight of the evidence.

[*P16] In defining felonious assault, R.C. 2903.11(A)(2) states that: "No person shall knowingly *** [c]ause or attempt to cause physical harm to another *** by means of a deadly weapon or dangerous ordnance."

[*P17] R.C. 2923.13(A)(1)/(2)/(3) defines having weapons under disability as follows: (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
(1) The person is a fugitive from justice.  (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent 31 Case 5:08-cv-00520-PCE Document 12 Filed 09/26/2008 Page 31 of 38 child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.  (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use,

20

(5:08cv00520)

sale, administration, distribution, or trafficking in any drug of abuse.

[*P18] R.C. 2919.25(A), in defining domestic violence states that '[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member.'  Appellant's argument here appears to be based on the fact that Clark, the only eyewitness to the events, testified on behalf of Appellant.  At trial, her testimony varied dramatically from the statements she gave to police officers, paramedics, her mother, and the doctor who treated her at the hospital.  These witnesses, testifying on behalf of the State, relayed a similar version of the night in question.  In sum, they testified that Clark indicated that Appellant pushed her into her apartment, threw a stereo through her patio window, then pulled out a gun and hit her with it.  Clark testified that Appellant was her boyfriend and that she loved him.  She further admitted that she had rehearsed with Appellant what she should say on the stand in response to the prosecutor's questions.  Contrary to her statements on the night of the attack, Clark testified that she saw Appellant in the lobby of her apartment building and they went to her apartment together.  [**12] She testified that she had given him a key to her building and to her apartment and he often used them to get into her apartment, but that they did not live together.  She stated that she invited Appellant into her apartment on the night in question.  She testified that once in her apartment, they started arguing and when she went to put her coat away, she heard a window break.  Clark testified that she then attacked Appellant for breaking her window and that she was very upset with Appellant.  According to Clark, she was not sure when or how her head started bleeding, but Appellant did not have a gun. Clark explained that she was very intoxicated and had smoked marijuana earlier in the night.  She denied telling police officers at the scene that she was hit in the head with a gun and denied that she was hysterical and crying when she talked with her mother.

[*P19] On cross-examination, Clark testified to a recorded jailhouse phone conversation that she had with Appellant hours
after the incident occurred.  Clark stated that she did remember the conversation.
Q: Do you recall in that same conversation when you're crying and upset, that you said to [Appellant], 'You hit me [**13] with a gun,' and his response was: 'You're on the phone.  It wasn't a gun.  It was my knuckle.'  And your response was, 'You hit me with your hand.' Do you remember that conversation?

21

(5:08cv00520)

A: I recall being still mad and frustrated and wanting him to feel bad.

[*P20] This Court will not overturn a conviction because the jury chose to believe the testimony offered by the prosecution.  *State v. Tobey,* 9th Dist. No. 05CA0103-M, 2006 Ohio 5069, at P27.  We have held that, 'in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness.'  *Prince v. Jordan,* 9th Dist. No. 04CA008423, 2004 Ohio 7184, at P35, citing *State v. Jackson* (1993), 86 Ohio App.3d 29, 33, 619 N.E.2d 1135.  As the finder of fact, the trial court was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt.  *See State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.  Thus, this Court will defer to the factfinder's judgment on matters of credibility.  *State v. Young, 9th Dist. No. 22636, 2006 Ohio 68,* at P35, [**14] citing *State v. Lawrence* (Dec. 1, 1999), 9th Dist. No. 98CA007118, 1999 Ohio App. LEXIS 5624, at *19.  It is clear in the present case that the jury chose to disbelieve Clark's testimony on the witness stand because she was biased and because Appellant coached her to recant her prior statements.  The jury found more credible Clark's statements made closer to the incident than her testimony on the witness stand.  After a review of the record, this Court cannot conclude that the trial court created a manifest miscarriage of justice.  As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency on these claims. *Roberts, supra,* 1997 Ohio App. LEXIS 4255, [slip op.] at *5. Accordingly, Appellant's assignments of error are overruled.

ECF No. 12-2 at 99-103.

In his traverse, Powers claimed that the Court of Appeals evaded its obligation to adjudicate his claim on the merits by disposing of his manifest weight of the evidence and insufficient evidence claims together.  The undersigned finds that the Court of Appeals' adjudication satisfies the *Jackson v. Virginia*[9] test in that, after viewing the evidence in the light

---

[9] "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.  Whether the State could constitutionally make the conduct at issue criminal at all is, of course, a distinct question." *Jackson*, 443 U.S. at 324 n.16.

22

(5:08cv00520)

most favorable to the prosecution, the Court can conclude that any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.  ECF No. 16.

Accordingly, this Court recommends that Ground Three be denied because the Court of Appeals'

adjudication was not contrary to, nor did it constitute an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States.

### III.  Recommendation

In light of all the foregoing it is recommended that Grounds One, Two and Three of

Robert O. Powers' petition for a writ of habeas corpus be dismissed, and that the entire petition

be denied without further proceedings.


September 24, 2010                              /s/ Benita Y. Pearson
Date                                       United States Magistrate Judge



### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

*See Papachristou v. Jackson*, 405 U.S. 156 (1972); *Robinson v. California*, 370 U.S. 660 (1962).

(5:08cv00520)

**Appendix A**
**Direct Appeal**

1. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT CONVICTION OF HAVING WEAPONS WHILE UNDER DISABILITY.

2. THE COURT ERRED IN PERMITTED THE HEARSAY TESTIMONY OF ARETHA JACKSON (SHANA CLARK'S MOTHER), OVER THE OBJECTION OF APPELLANT.

3. THE COURT ERRED IN PERMITTING THE PROSECUTION TO INQUIRE AND IMPLY THAT APPELLANT HAD COMMITTED A SEX ORIENTED OFFENSE WITH THE VICTIM AND IN DOING SO MISREPRESENT THE LAW.

4. APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

5. THE COURT ERRED IN DENYING APPELLANT THE RIGHT TO REPRESENT HIMSELF AND MAKING THE APPROPRIATE INQUIRY OF APPELLANT.

ECF No. 12-2 at 41.

(5:08cv00520)

**Appendix B**
**Supreme Court of Ohio**

1. THE SIXTH AMENDMENT GUARANTEES A CRIMINAL DEFENDANT THE RIGHT TO SELF REPRESENTATION.
2. IT IS FUNDAMENTAL THAT THE PROSECUTION MUST PROVE EVERY ELEMENT OF THE CRIME CHARGES.
3. THE TERM ABUSE OF DISCRETION CONNOTES MORE THAN AN ERROR OF LAW OR JUDGMENT.

4. IF APPEAL IS INTEGRAL PART OF STATE'S SYSTEM FOR ADJUDICATING GUILT OR INNOCENCE, THEN PROCEDURES FOR REVIEW MUST NOT VIOLATE DEFENDANT'S DUE PROCESS RIGHTS. SECTION 3, ARTICLE IV, OF THE OHIO CONSTITUTION.

5. State v. Reed (1996) 74 Ohio St.3d, 534 660 N.E. 2d 458; THE COURT HELD THAT THE TWO PRONG ANALYSIS FOUND IN STRICKLAND IS THE APPROPRIATE LEVEL OF REVIEW TO DETERMINE WHETHER AN APPELLANT HAS RAISED A GENUINE ISSUE IN AN APPLICATION FOR REOPENING AN APPEAL. APP.R. 26(B).

6. IT IS APPELLANT'S DUTY TO PROVIDE A TRANSCRIPT FOR APPELLATE REVIEW BECAUSE HE BEARS THE BURDEN OF DEMONSTRATING ERROR BY REFERENCE TO MATTERS IN THE RECORD, State v. Skaggs (1978), 53 Ohio St.2d 162.

7. THE REMARKS OF THE [ ] DURING THE COURSE O[F] A TRIAL, OR HIS MANNER OF HANDLING THE TRIAL, CLEARLY INDICATING A HOSTILITY TO ONE OF THE PARTIES CAN BE A BASIS FOR FINDING OF PLAIN ERROR, CRIM.R. 52.

ECF No. 12-2 at 112.

(5:08cv00520)

## Appendix C
## Supreme Court of Ohio

1. THE DUE PROCESS CLAUSES OF THE 14TH, AND 6TH, 8TH AMENDMENTS OF THE U.S. CONSTITUTION GUARANTEES THAT EVERY CITIZEN BE GRANTED THE ABOVE PROTECTIONS. APP. 26(B)(2)(b) STATES THAT IF AN APPLICANT SHOWS GOOD CAUSE FOR AN UNTIMELY FILED APPLICATION TO REOPEN HIS DIRECT APPEAL THE APPLICATION SHALL BE ACCEPTED. THE COURT OF APPEALS WRONGLY CONCLUDED THAT THE APPELLANT HAD NOT SHOWN GOOD CAUSE FOR THE UNTIMELY FILING.

2. AN APPLICATION TO REOPEN A APPEAL IN THE COURT OF APPEALS SHALL BE FILED IN THE COURT OF APPEALS WHERE THE APPEAL WAS DECIDED WITHIN 90 DAYS FROM JOURNALIZATION OF THE APPELLATE JUDGMENT UNLESS THE APPLICANT SHOWS GOOD CAUSE FOR FILING AT A LATER TIME. APP.R. 26(B)(1). LOCAL RULE 1.1: THE CLERK OF THE COMMON PLEAS OF THE COUNTY OF SUMMIT SERVE AS THE CLERKS OF THE COURT OF APPEALS, NINTH APPELLATE DISTRICT, PURSUANT TO R.C. 2303.03, ALL DOCUMENTS REQUIRED TO BE FILED IN THE COURT OF APPEALS SHALL BE FILED WITH THE CLERK OF THE COURT OF APPEALS OF THE COUNTY IN WHICH THE APPEAL OR ACTION ORIGINATED. DUE PROCESS CLAIM.

ECF No. 12-2 at 242.

26

(5:08cv00520)

## Appendix D
## Writ of Habeas Corpus

**GROUND ONE**: THE TRIAL COURT DENIED PETITIONER THE SIXTH AMENDMENT RIGHT TO REPRESENT HIMSELF AT TRIAL.

**Supporting FACTS**: On April 6, 2006, petitioner filed an equivocal motion in the trial court titled "Motion to Waive counsel". The trial court denied the above mentioned motion without conducting a hearing on April 25, 2006. A suppression hearing was held on May 30, 2006. During the suppression hearing, petitioner informed the trial judge that he was dissatisfied with his attorney and that he wished to proceed pro se.

After the trial judge declared that she "makes the ultimate decision as to who represents the Petitioner", the suppression hearing concluded. Following the above mentioned suppression hearing, the petitioner repeatedly informed his appointed attorney, Mr. Russell Buzzelli, that he wished to proceed pro se. Realizing the nature of petitioner's request, the trial court held a hearing on June 6th, or June 8th, 2006. During the hearing on petitioner's Faretta request, the trial judge informed the petitioner of the dangers of self representation. Upon the trial judge's satisfaction that the petitioner had knowingly, intelligently, and voluntarily unequivocally elected to proceed pro se, the petitioner was permitted to sign a consent to waive counsel document. The trial judge then put petitioner's Faretta request under advisement for approximately fifty three days.

While petitioner's Faretta request was under advisement, he was not permitted to file his own motions, or, directly address the trial court. On July 31, 2006, the morning of trial, the trial judge denied petitioner's Faretta request and his motions to subpoena material witnesses for trial. The petitioner was also ordered not to address the trial court.

**GROUND TWO**: PETITIONER WAS DENIED DUE PROCESS WHEN THE STATE WAS PERMITTED TO REMARK THAT SEVERAL GUNS FROM A PREVIOUS CASE BELONGED TO THE PETITIONER.

**Supporting FACTS**: At trial, upon the prosecution's cross examination of the alleged victim, the trial court permitted the Sate to remark that several guns from a prior offense belonged to the petitioner, when in fact the petitioner was exonerated of the prior offense.

**GROUND THREE**: THERE WAS INSUFFICIENT EVIDENCE TO

(5:08cv00520)

PROVE THE ELEMENTS OF HAVING WEAPONS WHILE UNDER DISABILITY.

**Supporting FACTS**: At trial, the State failed to produce any evidence that the alleged firearm was operable.

**GROUND FOUR**: PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT FAILED TO INQUIRE INTO PETITIONER'S CLAIM THAT HIS APPOINTED COUNSEL WAS PROVIDING INEFFECTIVE ASSISTANCE.

**Supporting FACTS**: During pretrial, while the petitioner was awaiting the trial court's ruling to represent himself, petitioner tried to address the trial court pertaining to his appointed counsel's failure to subpoena material, eyewitnesses for trial. Moreover, petitioner attempted to notify the trial court that his appointed counsel would not investigate exculpatory evidence. Moreover, petitioner maintains that his attorney failed to file motions that were critical to his defense. During the pretrial phase, the petitioner provided his attorney with material evidence pertaining to blood that was at the scene where the incident occurred. While at the pretrial hearing, petitioner's attorney, Mr. Summers, informed the trial court that there existed blood which belonged to the victim, on a steel sliding glass door frame where the victim hit her head while fighting with the petitioner. The prosecution disputed the blood evidence by stating that the blood had been cleaned up. Mr. Summers informed the trial court that he was in possession of photographs which could support his claim relating to the blood. The trial judge stated that the court did no know whether the evidence was reliable. Mr. Summers told petitioner that he would file a motion to the trial court to have the blood tested. He never filed any motions. Mr. Summers also informed the petitioner that he would introduce several exculpatory telephone conversations between the petitioner and the victim at trial. He never presented the exculpatory telephone conversations. In the above mentioned telephone conversations, which were recorded by the Summit County Jail Deputies while the petitioner was confined to the jail awaiting trial, the petitioner verbally abused the victim for making untrue statements to Akron police officers on the night of Feb 28, 2006.

The recorded telephone conversations also contains statements from Ms. Clark, where she sympathetically apologized to the petitioner for making untrue statements to the police officers relating to the alleged gun that petitioner allegedly had on the night of Feb, 28, 2006. The most critical portion of the telephone conversations in which Mr. Summers failed to investigate is a March 1, 2006, telephone

28

(5:08cv00520)

conversation where Ms. Clark stated to the petitioner that she had received eight staples to the top of he head as a result of her injury that she sustained on the night of Feb, 28, 2006. However, hospital reports show that Ms. Clark received only four staples. Ms. Clark's testimony at trial was that she merely wanted to make the petitioner feel bad, and that she was drunk and high from drinking and smoking marijuana. Ms. Clark testified that she was angry at the petitioner for breaking her window. Petitioner maintains that Ms. Clark's statements in the above mentioned telephone conversations are corroborating exculpatory evidence. Petitioner also maintains that several material witnesses, including an eyewitness, were never subpoenaed by his attorney. The petitioner's only chance to address the trial court pertaining to his attorney's deficient performance, was on the second day of his trial. While the petitioner was attempting to elaborate on his attorney's ineffectiveness, the trial judge interrupted the petitioner by stating that petitioner's complaints pertaining to his attorney's performance was a matter for his attorney to deal with.

**GROUND FIVE**: THE TRIAL JUDGE'S ATTITUDE AND MANNER IN WHICH SHE HANDLED THE TRIAL DENIED THE PETITIONER OF THE RIGHT TO A FAIR TRIAL.

**Supporting FACTS**: During a hearing that was held on petitioner's request to represent himself, the prosecution informed the trial judge that the petitioner did not deserve to represent himself because the petitioner had criticized the trial court while he conversated on the Summit County Jail's monitored and recorded telephone system. The trial judge inquired as to whether the petitioner was referring to her in the telephone conversations. The trial judge then stated that she would reserve her ruling on the petitioner's Faretta request until she could listen to the telephone conversations. On July 28, 2006, the trial judge inquired into whether the petitioner was prepared to represent himself. The petitioner informed the trial court that he hadn't received any discover, therefore, he needed a continuance. The trial judge declared that she would not grant any continuances. On July 31, 2006, the trial judge denied petitioner's Fretta request, and his motions to subpoena witnesses. Throughout the entire trial, the trial judge egregiously abused her discretion by permitting the prosecution to engage in a pattern of gross and prejudicial misconduct.

**GROUND SIX**: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE PROSECUTION TO IMPLY THAT THE PETITIONER HAD COMMITTED A SEX ORIENTED OFFENSE.

**Supporting FACTS**: During trial, and upon the prosecutions' cross

29

(5:08cv00520)

examination of the alleged victim, the trial court permitted the prosecutor to imply that the petitioner had engaged in sexual intercourse with the alleged victim when she was fifteen years of age. (Habeas petition.)

**GROUND SEVEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBTAIN TRANSCRIPTS OF THE HEARING WHICH WAS HELD ON PETITIONER'S REQUEST TO REPRESENT HIMSELF AT TRIAL.

**Supporting FACTS**: Petitioner requested to proceed pro se at trial. Appellate counsel refused to obtain transcripts to the hearing.

**GROUND EIGHT**: THE TRIAL COURT ERRED WHEN IT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHT TO REPRESENT HIMSELF AT TRAIL.

**Supporting FACTS**: The trial court ordered Petitioner not to speak, and denied his request to proceed pro se at trial.

**GROUND NINE**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN THE TRIAL COURT FAILED TO INQUIRE INTO PETITIONER'S ALLEGATION THAT HIS TRIAL COUNSEL WAS PROVIDING DEFICIENT REPRESENTATION.

**Supporting FACTS**: Subsequent to denying petitioner his right to proceed pro se, he inquired to the court about not being allowed to have witnesses on his behalf, and his counsel's ineffectiveness.

**GROUND TEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER WS DENIED A FAIR TRIAL WHEN THE TRIAL COURT PERMITTED THE STATE TO REMARK THAT SEVERAL WEAPONS FROM A PREVIOUS OFFENSE BELONGED TO PETITIONER.

**Supporting FACTS**: At trial, the State was permitted to cross examine the victim about offense which petitioner was exonerated.

**GROUND ELEVEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER'S TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO REQUEST LIMITING INSTRUCTIONS.

**Supporting FACTS**: At trial, petitioner's prior convictions were introduced for the purpose of establishing elements. However, the State was permitted to refer to petitioner as a "drug dealer".

**GROUND TWELVE**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT FAILED TO GIVE LIMITING INSTRUCTIONS.

30

(5:08cv00520)

**Supporting FACTS**: At trial, the State repeatedly elicited bad acts of petitioner's, and alluded to matters which were not in evidence.

**GROUND THIRTEEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER'S TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO IRRELEVANT AND PREJUDICIAL ASSERTIONS MADE BY THE PROSECUTOR.

**Supporting FACTS**: At trial, petitioner's counsel failed several times to object to prejudicial assertions made by the State, including a remark that petitioner assaulted victim's family.

**GROUND FOURTEEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER WAS DENIED A FAIR TRIAL WHEN THE STATE WAS PERMITTED TO REMARK THAT PETITIONER PROVIDED THE VICTIM WITH DRUGS.

**Supporting FACTS**: At trial, the State was permitted to remark that the petitioner provided drugs to the victim.

**GROUND FIFTEEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER WAS DENIED A FAIR TRIAL WHEN THE STATE WAS PERMITTED TO ELICIT IRRELEVANT AND PREJUDICIAL BAD ACTS OF PETITIONER'S FROM A STATE'S WITNESS.

**Supporting FACTS**: At trial, the State was permitted to engage in misconduct by eliciting prejudicial comments from Aretha Jackson.

**GROUND SIXTEEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER WAS DENIED A FAIR TRIAL WHEN THE STATE WAS PERMITTED TO ALLUDE TO PREJUDICIAL MATTERS WHICH WERE NOT IN EVIDENCE.

**Supporting FACTS**: At trial, the State was permitted to remark that once petitioner got out of jail, he would harm the victim and her family, and that petitioner vandalized a vehicle.

**GROUND SEVENTEEN**: APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN HIS TRIAL COUNSEL ELICITED IRRELEVANT AND PREJUDICIAL TESTIMONY FROM THE VICTIM.

**Supporting FACTS**: At trial, petitioner's counsel elicited information from the victim as to what purpose a scale was used.

**GROUND EIGHTEEN**: APPELLATE COUNSEL WAS

31

(5:08cv00520)

> INEFFECTIVE WHEN HE FAILED TO ARGUE THAT
> PETITIONER'S TRIAL COUNSEL WAS INEFFECTIVE WHEN
> HE STIPULATED TO THE INTRODUCTION OF PREJUDICIAL
> PRIOR CONVICTIONS OF PETITIONERS.
> **Supporting FACTS**: At trial, petitioner's counsel stipulated to the
> admittance of prejudicial prior convictions, when he could have
> suggested that less prejudicial convictions be admitted to establish
> elements.
> **GROUND NINETEEN**: APPELLATE COUNSEL WAS
> INEFFECTIVE WHEN HE FAILED TO ARGUE THAT THE
> CUMULATION OF ERRORS: TWO, THREE, FOUR, FIVE, SIX,
> SEVEN, EIGHT, NINE, TEN, ELEVEN, TWELVE, THIRTEEN,
> FOURTEEN, FIFTEEN, SIXTEEN, SEVENTEEN, EIGHTEEN,
> AND TWENTY DENIED PETITIONER THE RIGHT TO A FAIR
> TRIAL.
> **GROUND TWENTY**: APPELLATE COUNSEL WAS
> INEFFECTIVE WHEN HE FAILED TO ARGUE THAT THE
> TRIAL JUDGE'S ATTITUDE AND MANNER IN WHICH SHE
> HANDLED THE TRIAL, DENIED THE PETITIONER OF THE
> RIGHT TO A FAIR TRIAL.
> **Supporting FACTS**: The trial judge's numerous abuse of discretions,
> rulings, and comments, deprived petitioner of the right to a fair trial.

ECF No. 12 at 9-15.